Joseph P. CAULFIELD, Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Appellee.

Nos. 93–4054 and 93–4057.

United States Court of Appeals,
Eighth Circuit.

Submitted May 12, 1994.

Decided Aug. 29, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied Oct. 19, 1994.

Jerry L. Suddarth, O'Fallon, MO, argued, for appellant.

William J. Patton, Washington, DC, argued (Loretta C. Argrett and Richard Farber, on the brief), for appellee.

Before BEAM, Circuit Judge, HENLEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

Using the bank-deposits-plus-cash-expenditures method to reconstruct taxable income, the Commissioner of Internal Revenue determined that Joseph Caulfield, a public insurance adjuster, underpaid his 1982 and 1984 federal income taxes. The Commissioner assessed tax deficiencies for those years, including negligence and underpayment additions. The Tax Court upheld the Commissioner in all respects. *See Caulfield v. Commissioner*, 66 T.C.M. (CCH) 710, 1993 WL 347344 (1993). Caulfield challenges the reconstruction of his taxable income and the addition of negligence and underpayment penalties. We affirm.

Caulfield's business is conducted as a sole proprietorship. The Commissioner determined that Caulfield's cash-receipts-and-disbursements method of accounting did not clearly reflect his income in 1982 and 1984. That permitted her to determine Caulfield's income by "such method as, in the opinion of the Secretary, does clearly reflect income." I.R.C. § 446(b).[1] The Commissioner chose the bank-deposits-plus-cash-expenditures method to recompute Caulfield's taxable income. *See generally United States v. Abodeely*, 801 F.2d 1020, 1023–24 (8th Cir.1986); *Burke v. Commissioner*, 929 F.2d 110, 112 (2d Cir.1991).

The Commissioner first calculated the net bank funds available to pay Caulfield's business expenses each year. She did this by subtracting nondeductible expenditures and bank account transfers from Caulfield's total bank account funds available in 1982 ($423,821 − $95,696 = $328,125), and 1984 ($1,600,831 − $893,091 = $707,740). The Commissioner then subtracted net bank funds available from the total cash business expenses Caulfield deducted on Schedule C of his Form 1040 returns ($375,365 in 1982 and $763,523 in 1984). The Commissioner treated the resulting amount as business expenses not paid with deposited funds. She added that amount ($47,240 for 1982 and $55,783 for 1984) to Caulfield's net business bank deposits to arrive at his gross business receipts, $431,269 in 1982 ($384,029 + $47,240), and $827,228 in 1984 ($771,445 + $55,783).

The Commissioner concluded that Caulfield understated taxable income on his returns by the difference between her calculation of gross business receipts and the amounts Caulfield reported ($431,269 − $380,731 = $50,538 for 1982; $827,228 − $760,249 = $66,979 for 1984). Based upon this understatement, the Commissioner determined that Caulfield had underpaid income tax by $21,974 in 1982 and $15,949 in 1984. She assessed the following deficiencies: for 1982, $21,974 plus negligence additions of $1,099 and fifty percent of the interest due on $21,974; for 1984, $15,949 plus negligence additions of $797 and fifty percent of the interest due on $15,949, plus a substantial understatement addition of $3,987.

The Tax Court meticulously reviewed, and found appropriate, the Commissioner's use of the bank-deposits-plus-cash-expenditures method. The Court considered and rejected the fact-intensive contentions Caulfield renews on appeal. The Court then restated the Commissioner's calculations, using figures derived from the Court's findings and the parties' stipulation of facts. Though the Court's calculation of total deposits, net business deposits, net funds available, business expenses paid with undeposited funds, and

---

1. Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue.

gross unreported income differed from the Commissioner's, it found that all discrepancies were to the taxpayer's advantage. Noting that the Commissioner did not seek an increased deficiency based on the stipulated numbers, and that "mathematical exactitude" is not required, the Court upheld the tax deficiencies of $21,974 in 1982 and $15,949 in 1984. It also upheld the assessment of negligence and substantial underpayment additions because Caulfield presented no evidence on these issues.

## I. The Deficiencies in Tax.

■ **A.** On appeal, Caulfield first argues that the Commissioner erred in concluding that he did not keep adequate tax records. This contention is totally without merit. First, it was not properly preserved—the Tax Court stated that Caulfield "does not challenge [the Commissioner's] finding of inadequate records or otherwise seriously question [her] authority to reconstruct his income." 66 T.C.M. at 715. Second, although Caulfield asserts that his cash-receipts-and-disbursements method was sound, and was in fact used by the Commissioner in reconstructing his income, the problem in this case was not what Caulfield's records showed, it was the substantial *unrecorded* taxable income. As the Third Circuit observed in rejecting a similar contention in *Schwarzkopf v. Commissioner*, 246 F.2d 731, 733–34 (3d Cir.1957):

> If taxpayer's contention is correct, everyone could keep a set of apparently accurate books, carefully destroy other evidences of the source and amount of income, and defend by an alien rule that the net worth method may not be used in those circumstances—and thus the government could be defrauded with impunity.

■ **B.** A presumption of correctness normally attaches to the Commissioner's assessment of a tax deficiency. *See Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933). Caulfield next argues that

the Commissioner's method of redetermining his taxable income is not entitled to that presumption because it was full of errors, and because she did not properly eliminate his alleged sources of nontaxable income, namely, $32,588 withdrawn from a bank account in 1982, and undocumented settlements of automobile accident and medical malpractice lawsuits. We disagree.

■ "This court must accept the Commissioner's method of reconstructing income so long as it is rationally based." *Rowell v. Commissioner*, 884 F.2d 1085, 1087 (8th Cir. 1989). The bank-deposits-plus-cash-expenditures method is a rational way to reconstruct taxable income, *see Abodeely*, 801 F.2d at 1024–25; *Parks v. Commissioner*, 94 T.C. 654, 658, 1990 WL 48997 (1990), provided the Commissioner has properly segregated taxable and non-taxable income and expenditures, *compare Burke*, 929 F.2d at 112, *with Teichner v. Commissioner*, 453 F.2d 944, 945–47 (2d Cir.1972). The Commissioner's assessment "is expected to be rational, not flawless." *Dodge v. Commissioner*, 981 F.2d 350, 353 (8th Cir.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 58, 126 L.Ed.2d 28 (1993).

The Tax Court rejected Caulfield's factual allegations of error, such as the assertion that an $11,318 Camaro was not a personal expenditure in 1982 because he bought it on credit.[2] *See* 66 T.C.M. at 718. The Court properly accounted for opening and closing bank balances, *see* 66 T.C.M. at 713–14, and rejected Caulfield's claim of litigation settlement income as totally unsupported, *see* 66 T.C.M. at 719. The Court further found that any inaccuracies in the Commissioner's calculations were to Caulfield's advantage. These findings are not clearly erroneous. *See Moser v. Commissioner*, 914 F.2d 1040, 1044 (8th Cir.1990) (standard of review). Therefore, we agree that the Commissioner's reconstruction of Caulfield's taxable income is entitled to the presumption of correctness. Taxpayers who cannot produce adequate records "may not complain of the inevitable inaccura-

---

2. In his reply brief, Caulfield asserted that the "contract to purchase the Camaro" was discovered in the Commissioner's files after trial and urged us to remand for further proceedings in the Tax Court. At oral argument, however, he admitted that the new document reflects a bank loan, not an installment purchase, and he did not persuade us this is material, newly discovered evidence. We deny the request for remand.

cies in assessment their default occasions." *Dodge*, 981 F.2d at 353.

For the foregoing reasons, we affirm the Commissioner's calculation and assessment of tax deficiencies for 1982 and 1984.

## II. The Additions to Tax.

■ **A.** Caulfield argues that he should not have been assessed negligence penalties under § 6653(a)(1) and (2). Under these provisions (since repealed), "[i]f any part of any underpayment . . . of any tax . . . is due to negligence," the Commissioner adds penalties equal to five percent of the underpayment, § 6653(a)(1), and fifty percent of the interest on "the portion of the underpayment . . . attributable to the negligence," § 6653(a)(2). As the Tax Court noted, the taxpayer "bears the burden of proving that the Commissioner's assessment of a penalty for negligence was improper." *Edison Homes, Inc. v. Commissioner*, 903 F.2d 579, 584 (8th Cir.), *cert. denied*, 498 U.S. 984, 111 S.Ct. 517, 112 L.Ed.2d 529 (1990); *see Chase v. Commissioner*, 926 F.2d 737, 740 (8th Cir. 1991).

Caulfield presented no evidence on this issue other than to defend the accuracy of his tax returns. When a taxpayer fails to maintain adequate records of his taxable income, the Commissioner is put to the time-consuming task of reconstructing taxable income. If additional tax is then owing, it is particularly appropriate that the taxpayer pay, as a penalty, significantly more than the interest that is otherwise owed for late payment of the tax, unless he can affirmatively demonstrate that the failure was not due to negligence. *See Catalano v. Commissioner*, 81 T.C. 8, 17, 1983 WL 14910 (1983); *Axelrod v. Commissioner*, 56 T.C. 248, 258–59, 1971 WL 2505 (1971). The Tax Court correctly upheld the negligence additions in this case.

■ **B.** Caulfield also challenges the substantial understatement addition to his 1984 tax.[3] Although § 6661(a) provides that a twenty-five percent penalty "shall be added," the taxpayer may avoid this addition in either of two ways—by proving there is "substantial authority" for his position, *see* § 6661(b)(2)(B)(i); *Norgaard v. Commissioner*, 939 F.2d 874, 880–81 (9th Cir.1991), or by persuading the Commissioner to waive the penalty, *see* § 6661(c); *Heasley v. Commissioner*, 902 F.2d 380, 385 (5th Cir.1990). Courts review the Commissioner's decision not to waive the penalty for abuse of discretion. *See, e.g., Karr v. Commissioner*, 924 F.2d 1018, 1026 (11th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 992 (1992).

■ Caulfield did not prove substantial authority for his position, nor did he ask the Commissioner to waive the substantial understatement penalty. On appeal, he argues that the penalty is unfair because he reported his income in good faith and cooperated with the Commissioner's audit. But the principal purpose of this penalty is "to deter taxpayers from playing the 'audit lottery,' that is, taking undisclosed questionable reporting positions and gambling that they [will] not be audited." *Karpa v. Commissioner*, 909 F.2d 784, 786 (4th Cir.1990). Thus, Caulfield's faulty record-keeping and substantial understatement fall squarely within the purview of the statute.

■ It is well established that the Commissioner may impose both negligence and substantial understatement additions. *See Dodge*, 981 F.2d at 357; *Cramer v. Commissioner*, 101 T.C. 225, 257–59, 1993 WL 369030 (1993). The Commissioner should exercise her discretion under § 6661(c) to avoid unwarranted duplication of penalties, since "[t]he I.R.S. should not exact every penalty possible in every case where taxpayers pay less than the full amount of tax due." *Heasley*, 902 F.2d at 386.[4] However, in this case,

---

**3.** A substantial understatement is one that exceeds the greater of 10% of the tax required to be shown on the return, or $5,000. *See* § 6661(b)(1). Congress raised the penalty from 10% to 25% in the Omnibus Budget Reconciliation Act of 1986, Pub.L. No. 99–509, § 8002, 100 Stat. at 1951. *See generally Pallottini v. Commissioner*, 90 T.C. 498, 500–03, 1988 WL 26054 (1988).

**4.** We note in this regard that Congress recently replaced both penalties with a single twenty percent addition. *See* the current § 6662; Omnibus Budget Reconciliation Act of 1989, Pub.L. 101–239, §§ 7701, 7721, 103 Stat. 2388, 2395 (1989).

Caulfield's taxable income and tax were very substantially understated, his proper tax liability was camouflaged by inadequate records, and it appears the Commissioner exercised discretion by not imposing a substantial understatement penalty for 1982. Thus, there was no abuse of discretion in imposing that penalty for 1984.

We have carefully considered Caulfield's other contentions and conclude they are without merit. The judgment of the Tax Court is affirmed. Caulfield's motion to stay the judgment is denied. *See* I.R.C. § 7485.