# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1121

_____

David D. Parrish,                         *
                                          *
            Appellant,                    *
                                          *   Appeal from the
      v.                                  *   United States Tax Court.
                                          *
Commissioner of Internal Revenue,         *
                                          *
            Appellee.                     *

_____

Submitted:  November 18, 1998

Filed:  February 23, 1999

_____

Before BOWMAN, Chief Judge, LOKEN, Circuit Judge, and SIPPEL,[*] District Judge.

_____

LOKEN, Circuit Judge.

During tax years 1988, 1989, and 1990, David Parrish received sizeable payments from M & L Business Machine Company ("M & L") that he did not report on his federal income tax returns. The Commissioner of Internal Revenue assessed substantial tax deficiencies, plus penalties or additions to tax for each of those three

_____

[*]The HONORABLE RODNEY W. SIPPEL, United States District Judge for the Eastern District of Missouri, sitting by designation.

years. The Tax Court substantially upheld the deficiencies. Parrish appeals, arguing that the payments from M & L constituted a return of capital or principal, not taxable income, and alternatively that he is entitled to a shareholder's deduction for the pass-through losses of M & L, a Subchapter S corporation. We affirm.

Parrish is a doctor of psychiatry. After selling his interest in a hospital in 1984, Parrish and others purchased all the stock of M & L, an existing office machine repair company. Parrish purchased twenty percent of M & L's stock, becoming a vice president and director. Parrish also solicited associates, relatives, and friends to invest over $1,000,000 in M & L, which during this period was promising to pay investors interest rates ranging from 24% to 520%. In October 1990, M & L filed for bankruptcy. The bankruptcy trustee discovered M & L had operated ponzi and check-kiting schemes, using contributions from later investors to pay interest promised to earlier investors. Based upon an accounting firm's analysis of M & L financial transactions, the trustee sued Parrish for receiving pre-bankruptcy preferential transfers and fraudulent conveyances and recovered a judgment of more than $375,000.[1]

On his federal income tax returns for 1988, 1989, and 1990, Parrish reported receiving from M & L $28,000 in annual wages plus interest payments of $22,655 in 1989. The Internal Revenue Service investigated the obvious discrepancy between these amounts and the bankruptcy trustee's $375,000 judgment. During the audit, Parrish admitted also receiving from M & L monthly payments of $6,000, plus $1,000 a month to lease a Cadillac and undetermined amounts of finder's fees for soliciting investors. Parrish could not produce records substantiating either the amounts he paid into M & L as treasury stock purchases, loans, and other "investments," or the

---

[1] The parties in this case stipulated that the "circumstances of M & L and the nature of its activities during the 1980s are reflected in the finding[s]" of the Tax Court in <u>Premji v. Commissioner</u>, 72 T.C.M. (CCH) 16 (1996), 1996 WL 370999.

substantial amounts he admittedly received from M & L during this period. After obtaining bank statements and other relevant records, the IRS Agent conducting the audit determined that Parrish's records and tax returns did not accurately reflect his income from M & L for the three years in issue.

Reconstructing Parrish's taxable income using the bank deposits method for 1988 and 1989 and the specific items method for 1990, the Commissioner concluded Parrish had unreported income of $72,415 in 1988, $236,834.27 in 1989, and $163,822.31 in 1990. The Commissioner assessed tax deficiencies based upon this unreported income, adding on self-employment tax on the entire amount plus negligence, late filing, and accuracy related additions and penalties. Parrish commenced this action to challenge the deficiencies. After a one day trial, the Tax Court upheld the Commissioner on all issues except it reduced the amount of unreported income subject to the self-employment tax. Parrish appeals, challenging the following components of the assessed deficiencies.

**I. Unreported Income.** If a taxpayer fails to maintain adequate records of taxable income, the Commissioner may reconstruct income using a method that clearly reflects income. See 26 U.S.C. (I.R.C.) § 446(b); Caulfield v. Commissioner, 33 F.3d 991, 992-93 (8th Cir. 1994), cert. denied, 514 U.S. 1016 (1995). In this case, Parrish does not challenge the Commissioner's decision to reconstruct his income, the methods used by the Commissioner to reconstruct his income, and the amount of the payments from M & L used by the Commissioner in reconstructing his income. Therefore, the Commissioner's deficiency determinations are entitled to a presumption of correctness, and Parrish must prove them arbitrary or erroneous. See Welch v. Helvering, 290 U.S. 111, 115 (1933); Day v. Commissioner, 975 F.2d 534, 537 (8th Cir. 1992).[2]

_____

[2]Although the new statute does not apply to earlier tax years, it is worth noting that a highly publicized 1998 amendment to the Internal Revenue Code that in many

Parrish first argues the Commissioner erred by not treating the payments as a return of his investment because M & L made the payments to conceal its fraudulent misappropriation of that investment, like the payments to passive, defrauded investors in Greenberg v. Commissioner, T.C. Mem. 1996-281. The Tax Court rejected this argument because Parrish was not a passive investor in M & L, and because he failed to prove what amounts of money he loaned to and received from M & L. Parrish accuses the Tax Court of refusing to follow its prior Greenberg decision. The Commissioner argues, in essence, "good riddance." We need not debate whether the rather unique Greenberg case was correctly decided. Here, Parrish did not prove how much he loaned to or invested in M & L, nor did he prove he was a victim of fraud. He has established no foundation for a conclusion that, under Greenberg, the payments he received from M & L -- payments that are presumptively taxable income -- should be treated as a return of a capital investment or the principal of a loan. Thus, we agree with the Tax Court that this contention does not overcome the Commissioner's presumption of correctness.

Parrish next argues the Tax Court should have held that the payments he received from M & L were the non-taxable recovery of capital or loan principal under the "open transaction" doctrine established in Burnet v. Logan, 283 U.S. 404 (1931). See also Commissioner v. Liftin, 317 F.2d 234 (4th Cir. 1963); Underhill v. Commissioner, 45 T.C. 489 (1966). Even assuming this doctrine can be applied to transform interest received on a loan into the return of principal on a speculative investment, Parrish is again undone by his failure to prove either the amount or the nature of his investment in or loans to M & L.[3] The Tax Court found Parrish's

_____

cases will shift the burden of proof to the Commissioner does not apply to taxpayers who fail to maintain adequate tax records. See I.R.C. § 7491(a)(2)(B) (1998).

[3]Indeed, Parrish's undocumented assertions as to the extent of his investment have varied. Before the Tax Court, Parrish claimed to have purchased M & L stock for $243,000 and to have loaned M & L $334,500. On appeal, he contends he

documentation "scant and dubious."  At trial, he introduced a few loan agreements. He also submitted a composite exhibit of bank records documenting payments to M & L that the Tax Court found partially illegible and we cannot locate in the record on appeal.  There is nothing in the record permitting the Tax Court or this court to determine whether Parrish's loans to and investments in M & L had the requisite uncertainty of recovery to warrant application of the open transaction doctrine.  The Tax Court properly refused to *assume* that the payments to Parrish were a return of capital, as opposed to taxable interest, dividends, or finder's fees.  Thus, Parrish's reliance on the open transaction doctrine does not overcome the Commissioner's presumption of correctness.  See Page v. Commissioner, 58 F.3d 1342, 1348 (8th Cir. 1995); Dodge v. Commissioner, 981 F.2d 350, 354 (8th Cir. 1992).

For the foregoing reasons, we affirm the Tax Court's determination that Parrish failed to report taxable income for the tax years in question in the amounts assessed by the Commissioner.

**II. Pass Through of Subchapter S Corporation Losses.**  Alternatively, Parrish argues that as a shareholder of a Subchapter S corporation, M & L, he is entitled to a deduction for his share of M & L's losses during the 1988-1990 tax years.  See I.R.C. § 1366(a)(1).  Parrish has the burden of proving he is entitled to the deduction.  Cf. Bennett Paper Corp. v. Commissioner, 699 F.2d 450, 453 (8th Cir. 1983).  We have some doubt whether Subchapter S corporation losses may even be claimed when M & L did not file tax returns for 1988, 1989, or 1990, and after 1990 filed returns as a Subchapter C corporation.  But in any event, the Tax Court correctly determined that Parrish failed to meet his burden of proof on this issue.  First, he failed to introduce documents or other evidence substantiating M & L losses. Second, Subchapter S losses are limited to a taxpayer's investment (basis) in the corporation, and Parrish failed to establish his basis.   See I.R.C. § 1366(d)(1).

invested at least $975,000 in M & L.

-5-

Absent proof that Parrish is entitled to Subchapter S losses of an uncertain amount, the Tax Court was not required to estimate his proportional share of M & L's losses under the principle announced in Cohan v. Commissioner, 39 F.2d 540, 543-44 (2d Cir. 1930). See Coloman v. Commissioner, 540 F.2d 427, 431 (9th Cir. 1976); Oates v. Commissioner, 316 F.2d 56, 58-59 (8th Cir. 1963). Thus, that Court properly denied the claimed losses.

**III. Self-Employment Tax.** Parrish next challenges the assessment of self-employment taxes on his unreported income. Self-employment income is defined as "income derived by an individual from any trade or business carried on by such individual." I.R.C. § 1402(a); see Schelble v. Commissioner, 130 F.3d 1388, 1391 (10th Cir. 1997). In addition to arguing that the payments from M & L were not income -- a contention we have rejected -- Parrish argues the payments were not derived from a trade or business because he was an M & L outsider not responsible for the ponzi scheme. Income such as finder's fees is subject to self-employment tax. To compute Parrish's income subject to self-employment tax each year, the Tax Court deducted interest, dividends, and reported income from the total M & L payments, concluded Parrish failed to establish the remainder was not income from a trade or business, and upheld to this extent the assessed deficiencies. We agree with this analysis.

**IV. Penalties and Additions To Tax.** Finally, Parrish argues the Tax Court erred in upholding the assessment of negligence and accuracy related penalties. The Commissioner assessed a negligence addition to tax for 1988 and accuracy related penalties for 1989 and 1990.[4] Both penalties are owing when an underpayment is due

---

[4]The negligence addition was assessed under I.R.C. § 6653(a). For returns due after December 31, 1989, that provision was replaced by the accuracy related penalty in I.R.C. § 6662. See Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, § 7721(c)(1), 103 Stat. 2106, 2395-2400.

to the taxpayer's negligence or disregard of rules or regulations.  See §§ 6653(a), 6662(b).  The Tax Court found that Parrish was negligent in failing to maintain adequate books and records, and to exercise due care in reporting his income.  We review this factual determination for clear error.  See Langer v. Commissioner, 989 F.2d 294, 296 (8th Cir. 1993).  A negligence penalty or addition is appropriate when the taxpayer failed to keep adequate records, absent an affirmative showing of no negligence.  See Caulfield, 33 F.3d at 994.  Parrish failed to produce records relating to his M & L investments.  At trial, he offered only vague and incomplete documentation of his dealings with M & L despite uncontested proof he received substantial payments from M & L during the years in question.  In these circumstances, the Tax Court did not clearly err in finding negligence that warrants the assessment of negligence and accuracy related penalties and additions to tax.

At oral argument, in response to a question from the court whether Parrish was a participant in, or a victim of, the M & L ponzi scheme, his counsel replied that as an investor Parrish was simply "a consummate doctor."  After reviewing the record, we conclude that was an insult to the integrity of the members of the medical profession.  Parrish used M & L as a huge, undocumented piggy bank, while he encouraged friends and relatives to squander their savings on this worthless venture.  His resulting tax problems are a predicament of his own making, not the product of overzealous enforcement of the federal tax laws.

The judgment of the Tax Court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.